JOHN WEAVER, Adm'r, *etc.*

*v.*

HOWELL DAVIS.

47  235|
23a 158|
47  235|
60a  67|

47      235|
e93a ¹136|

1. ATTACHMENT—*garnishee of money in the hands of a special master in chancery.* Money in the hands of a special master in chancery, being the proceeds of a sale of land in a partition suit, and which funds, the court appointing him had by a final order directed to be paid over to D, as belonging to him, may be attached by D's creditors as property belonging to him.

2. Whenever an official holds money merely as the agent of the law, he cannot be charged on garnishee process in respect to such funds. But whenever his liability becomes changed, from an official to one personal, he is amenable to the process.

3. FORMER DECISIONS. The cases of *Lightner* v. *Steinagel,* 33 Ill. 515 ; *Pierce* v. *Carleton,* 12 ib. 358 ; *Reddick* v. *Smith,* 3 Scam. 451, examined and discussed and declared to be in entire accordance with this doctrine.

AGREED CASE from the Circuit Court of Madison county.

The opinion states the case.

Messrs. DALE & BURNETT, for the plaintiff.

Messrs. GILLESPIE & SPRINGER, for the defendant.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

The only question presented by this record is, can a special master in chancery be subjected to a garnishee process, so that money may be reached, which he, as such special master, has in his hands, being proceeds of a sale of land in a partition suit, and belonging to the defendant in the attachment, and which the court appointing him had ordered him to pay over to the defendant ? The circuit court decided he was not so subject, and discharged the garnishee.

To reverse this decision, the cause is brought here by agreement, and on the part of the attaching creditor, it is insisted, as the statute in relation to attachments, makes land, tenements, goods, chattels, rights, credits, money, and effects of the debtor liable to attachment, in whose hands or custody they may be found, and as the land out of which the money proceeded, was liable to attachment, even while the suit in partition was pending, it is unreasonable to hold, when it was converted into money by a judicial sale, that the money should not be liable, especially, after it has been ordered by the court to be paid over to the party entitled—the defendant in the attachment.

He also insists, that although the money may have come to the hands of the master as an officer of the law, yet, when the court ordered him to pay it over to the defendant in the attachment, a personal liability was created, the money becoming, thereby, his property, and was liable, in the hands of the master, to the attachment.  He likens it to a surplus in the hands of a sheriff, after satisfying an execution; that the master was bound to pay over to the defendant this money immediately, the court having taken final action upon it; that the construction contended for by the debtor would narrow down a broad and comprehensive law intended for the benefit of creditors, and designed to afford them ample remedy, to such small limits, as to deprive them, in a great measure, of its benefits.

On the other side, it is insisted, that notwithstanding the order of the court, the money was still in the possession of the officer of the court, and under the control of the court; that the order of the court was, that the master should pay over the money to Davis, and this must be obeyed to the letter, and that it would be no legal excuse for the master to report to the court, on a rule being served on him, by the person entitled to the money, to show cause why he had not paid it over, that it had been taken out of his hands by garnishee process, issued

from the common law side of the court; that this would produce collision and confusion, and should not be permitted, and the doctrine in the case of sheriffs is referred to, and relied on, and that the rule is as applicable to this officer as to a sheriff, and more so, as he is the special agent of the chancellor in executing his decree.

This court, in the case of *Lightner* v. *Steinagel*, 33 Ill. 515, had occasion to examine the doctrine on this subject as recognized by the best writers, and the courts of the country, and reached the conclusion, that public policy required that a sheriff should not be charged on a garnishee process, in respect to any funds or property held by him by virtue of his office, but if anything arose to change his liability from an official to one personal, he would be amenable to the process.

The reason is, the money is in the custody of the law and subject to the control of the court from which the execution issued, and to allow it to be taken on such process, might bring different tribunals into collision, and cause much embarrassment to officers concerned in the final execution of process. The specific money in the hands of the sheriff was not considered the property of the party claiming it, until paid over to him.

In the case of *Pierce* v. *Carleton*, 12 Ill. 358, this court held that a surplus remaining in the hands of the sheriff, after satisfying the plaintiff's execution, was liable to this process, and the reason given was, when the amount due on the judgment was returned into court, or paid over to the plaintiff, the execution had accomplished its office, and if there was a surplus it was the duty of the officer to pay it over to the defendant. It was then not strictly in the custody of the law, but the officer held it as so much money had and received for the use of the defendant.

From all the authorities in Lightner's case, the principle was deduced, that whenever an official holds money merely as the agent of the law, he cannot be subject to this process, but

when his liability is changed, he would become amenable to it.

What the court intended by this, was, manifestly, that when, as an officer, he had done all that was required of him, and had paid into court or to the plaintiff, the money collected by the writ, and that had become *functus officio*, and there was a surplus remaining in his hands which, though coming to him as an officer, he did not hold in that capacity, but as trustee for the debtor, he might be liable, as such trustee, for the surplus, in an action for money had and received, as in the case of *Pierce* v. *Carlton*, *supra*. As to the surplus, the sheriff was but a trustee; the money was not in the custody of the law, and for it an action for money had and received could be maintained.

The reason of a law is the soul of the law, and if the reason ceases, the law also ceases. There can be no question that the party to whom this money was ordered by the court to be paid, had a right to demand and receive this money from the master, and if not paid, he could maintain an action for it. It was his money by the adjudication of the court, over which, by the final order of the court, its control ended. There was nothing left thereafter, for adjudication, for we must intend by the statement of the case, that the order to pay over was the final order. This being so, in what respect does it differ from the case of a surplus remaining? We can perceive none. As in regard to a surplus, that may be attached when in the officer's hands, with equal reason may a sum of money which, by the final order of the court in the cause, has been decreed to be paid over to the person entitled. The money is no longer in the custody of the law, but in that of a person, who *quoad hoc*, becomes the trustee of the party entitled. We do not perceive how this money could be drawn into litigation, in the court passing the final order; if an investigation should be had into the validity of the sale out of which the money proceeded, that would not involve the right to the money. Suppose, in the case of a sale by a sheriff, and a surplus

remaining after paying the plaintiff, there arises a question as to the validity of the sale, would that divest the defendant of his right to the surplus, if he did not himself contest its validity? By claiming and accepting the surplus, would he not be held forever thereafter as acquiescing in the sale?

The idea that the master must obey the order, literally, and pay the money to the person named, and his return to the court that it has been taken out of his hands, by garnishee process, would not be a sufficient return, and might bring the common law side of the court and the chancery side in collision, and produce great confusion, does not seem to be warranted by the principles applicable to the case.

In the first place, the special master is not required to report his payment of the money over to the court. It will be intended he has performed that duty. It is a question between him and the person entitled to the money. Should he demand it, and the master fail to pay it over, a rule might be obtained against the master to show cause. Should he return to such rule, that the money had been taken out of his hands by a writ of attachment, as money belonging to the defendant in the attachment, he being the person who obtains the rule, we cannot perceive how any collision can occur between the courts, or how any confusion can ensue. The court making the order in the first instance, would, on reference to its own record, find the money was adjudged to be the money of the defendant; that question would be settled; and by referring to our statute, the court would find that the money and effects of a debtor, of every kind, were liable to attachment in whose hands or possession they might be found, and if the transaction was *bona fide*, the court would have nothing to do but to discharge the rule. By the first final order of the court, this money became, to all intents and purposes, the money of the debtor in the attachment—all litigation about it had ceased, and never, under any circumstances, could be revived.

If money or effects so situated, be not liable to garnishment, and that process be not effectual against it, the debtor might postpone a demand on the officer for it for years, and thus defeat the rights of creditors.

As in the case put by counsel for the attaching creditor, a debtor having an interest in real estate worth thousands of dollars, might obtain a partition, have the land sold, put the money in his pocket, and leave the State, and thus defeat the object of the attachment law.

It seems to us, this money was no more in the custody of the law than a surplus collected on execution, over and above a sufficiency to pay the judgment. The execution required the sheriff to have all the money collected by it, at the clerk's office, to render to the plaintiff his debt, or damages, and costs. This mandate still keeps the money in the custody of the law, yet this court, and all other courts in which the question has been made, have decided, as to the surplus, it was not, technically, in the custody of the law, but liable to attachment in the hands of the sheriff, he holding it as the trustee of the judgment debtor.

We perceive no difference in principle in the case before us and that of a sheriff or other officer holding a surplus. If the one is amenable to garnishment, no valid reason has been or can be assigned why the other should not also be amenable.

These views militate in no respect against those presented in *Reddick* v. *Smith*, 3 Scam. 451, and *Lightner* v. *Steinagel*, *supra*, and is in entire accordance with the case of *Pierce* v. *Carlton*, *supra*.

For the reasons given, the judgment of the circuit court is reversed, and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*